The application for the peremptory writ in each of these proceedings is therefore granted as a matter of right, and not in the exercise of discretion; but, as the question is novel in so far as it applies to the city of New York, it should be without costs.

---

(164 App. Div. 645)

### RAKOV v. BANKERS' LIFE INS. CO. OF CITY OF NEW YORK.
#### (No. 270/67.)

(Supreme Court, Appellate Division, Third Department. November 25, 1914.)

INSURANCE (§ 665*)—ACTIONS ON POLICIES—EVIDENCE—LIFE INSURANCE—
    MISREPRESENTATIONS.

    In an action upon a life insurance policy, evidence *held* sufficient to show that representations made by the insured that she had never applied for life insurance without receiving the policy applied for, and that no medical examiner had ever given an unfavorable opinion on her physical condition, were false, and that they were fraudulently made.

    [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1555, 1707–1728; Dec. Dig. § 665.*]

    Howard and Woodward, JJ., dissenting.

Appeal from Trial Term, Onondaga County.

Action by Herman Rakov against the Bankers' Life Insurance Company of the City of New York. Judgment for plaintiff, and defendant appeals. Reversed, and new trial granted.

Transferred from Fourth Department. See 163 App. Div. 937, 148 N. Y. Supp. 1140.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

A. D. Jenney, of Syracuse, for appellant.

Nash, Britcher & Eckel, of Syracuse (John F. Nash, of Syracuse, of counsel), for respondent.

JOHN M. KELLOGG, J. A bare statement of the facts shows the fraudulent nature of the plaintiff's claim. Rachel Rakov, the mother, had a policy of insurance in the Penn Mutual in· favor of her daughter, Mrs. Wolson, and on March 27, 1911, obtained a policy in the defendant's company in favor of the plaintiff, her son. An application for insurance was made in her name, August 23, 1907, to the Home Life Insurance Company, and was rejected. Another application was made that month to the New York Life Insurance Company, and rejected. In June, 1908, an application for insurance upon her life was made to the Manhattan Life Insurance Company, and was rejected. In 1910, another application was made to the Pittsburgh Life Insurance Company for a policy, and upon examining her the doctor found her condition of health such that he rejected her, never having sent on the application. In the application for the defendant's policy she states that she never had applied to any company for a policy without receiving the policy applied for, and that no medical ex-

---

'For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

aminer had given an unfavorable opinion on her physical condition with reference to life insurance.

The plaintiff seeks to avoid the effect of these false representations by the testimony of Mrs. Wolson, corroborated in part by her sisters, that the applications upon which no policies were issued were a fraud upon the mother, and that she did not know insurance was being applied for; that this fraud was resorted to, because the mother objected to the bother of having policies upon her life, and was led by her daughter and the agent to believe that the examinations were with reference to the old policy in the Penn Life. The agent and the physician concerned with each application swear to facts showing that she had knowledge that she was making application for insurance at the time. The evidence of Mrs. Wolson directly contradicts the testimony of the physician and the agent, and her evidence is improbable upon its face. Clearly the mother did not object to the bother of having a policy when the plaintiff obtained the policy in question. There seems to have been no discussion or trouble in that respect. The statement that the mother did not know that the policies were being applied for is evidently false. The mother died within a year after the policy was taken. It is evident the application for the policy in suit was intended as a fraud upon the insurance company, and that the attempted fraud is being sustained by deliberate false swearing. The evidence shows clearly that the statements in the application to the defendant's company that the applicant had not applied for a policy which she did not receive, and no medical examiner had given an unfavorable opinion of her physical condition with reference to life insurance, were false to the knowledge of the applicant, and were intended as a fraud upon the company. The judgment should therefore be reversed, as against the evidence.

It is urged, however, that two juries have been deceived by this perjured testimony, and that therefore the fraud, based upon it, should stand. I know of no such rule. The courts are remiss in their duty if a judgment is permitted to stand which rests solely upon perjured testimony. The fraud upon the court is no less a fraud because it has been perpetrated one or two times before.

The question seriously litigated was whether Mrs. Rakov made the prior applications, other than to the Penn Mutual, or whether they were fraudulently made by Mrs. Wolson, without her knowledge or consent, in the belief that the examinations were with reference to the old policy in the Penn Mutual; the court holding, in substance, if Mrs. Wolson's version of the transaction was true, that Mrs. Rakov had not made the applications. The defendant requested the court to charge that if Mrs. Rakov applied to another or other insurance companies, societies, or agents for life insurance, and did not receive the policy applied for from such other insurance company, society, or agent prior to her application for the policy in suit, the jury must find for the defendant. There was no pretense that Mrs. Rakov had forgotten any application made by her. The position taken by the defense was that she had not made the applications. I think, under the circumstances, the defendant was entitled to this charge, with such

modifications as the circumstances made necessary, and that its refusal was error.

I favor a reversal of the judgment, and a new trial, with costs to the appellant to abide the event.

Judgment and order reversed on law and facts, and new trial granted, with costs to appellant to abide event. The following findings of fact are disapproved of: That Rachel Rakov never had applied to any company for a policy of insurance without receiving the policy applied for; that a medical examiner had not given an unfavorable opinion of her physical condition; and that her representations in those respects were not fraudulently made. All concur (SMITH, P. J., in memorandum), except HOWARD and WOODWARD, JJ., who dissent.

SMITH, P. J. (concurring).  A misrepresentation of a material fact vitiates the policy, whether or not knowingly made.  Kasprzyk v. Metropolitan Life Ins. Co., 79 Misc. Rep. 263, 140 N. Y. Supp. 211.  In Stapleton National Bank v. U. S. Fidelity & Guaranty Co., in the Second Department (131 App. Div. 157, 115 N. Y. Supp. 372), the headnote in part reads:

"There is an implied condition in a contract of insurance of the truth of all representations of the insured material to the risk, on the faith of which the contract is made, even though they be dehors the policy. Hence a false statement may be pleaded as a breach of a condition of the policy without an allegation that it was made fraudulently or by mutual mistake."

See, also, Armour v. Transatlantic Fire Ins. Co., 90 N. Y. 450, 456.

There were two representations made: First, that the insured had never applied to any company for insurance without receiving the policy applied for; second, that no medical examiner had given an unfavorable opinion of the physical condition of the insured with reference to life insurance. It is claimed, inasmuch as the applications for life insurance made prior thereto, and rejected, had been made without the knowledge or authority of the insured, that the question was truthfully answered that the insured herself had not made such application. This seems to me too narrow an interpretation of the question asked. In view of the information sought, and of the purpose for which it was sought, when an application was made for her and rejected, her answer in the negative to the question asked would seem to me to be a misrepresentation of fact, which, though innocently made, would void the policy under the authorities cited. Assume for the argument, however, that such reasoning is good as to the first question asked, how can we escape the fact of misrepresentation as to the second question asked, to wit, whether any medical examiner had given an unfavorable opinion of her physical condition with reference to life insurance? Four applications had been made and rejected by reason of her physical condition. It must be assumed, in view of the evidence, that they were rejected because of an adverse report given by the medical examiner. That this was a most material fact will hardly be doubted. The question is not confined to an application made by the insured. Upon an application made by any other party, if such an opinion had been rendered by a medical examiner, it would be equally

material, and a misrepresentation as to the fact is equally fatal to the policy.

It is urged that by chapter 326 of the Laws of 1906, § 16, the law has been changed. It is therein provided, by section 58, added to the Insurance Law:

"And all statements purporting to be made by the insured shall in the absence of fraud be deemed representations and not warranties."

I do not understand that the Legislature thereby intended to prescribe that a contract made upon misrepresentation of a material fact should still be a valid contract, unless such misrepresentations were fraudulently made.

The rule of law that a contract made upon a misrepresentation of a material fact, although innocently made, is not enforceable, rests upon such sound equity that the Legislature will not be presumed to have intended to have abolished the same, unless language were used unmistakably indicating such an intent. It seems clear to me that the object intended to be accomplished by this legislation was to protect the policy holder from the rule of law that had theretofore been held that a warranty of an immaterial fact, if untrue, voided the policy.

The position taken by the plaintiff in this case is a most extraordinary one. As a matter of law it is wholly insufficient to answer the admitted fact of the false representation as to the expression of an unfavorable opinion as to the physical condition of the insured by a medical examiner.

I recommend that the judgment be reversed, with costs, and the complaint dismissed, with costs, and a finding that the deceased misrepresented a material fact, to wit, that no unfavorable opinion as to the physical condition of the insured had been given by a medical examiner, and that such misrepresentation was made for the purpose of inducing the contract of insurance, which was made by defendant in reliance thereupon.